(26 App. Div. 553.)

GRIFFIN v. BAUST et al.

(Supreme Court, Appellate Division, Second Department. March 22, 1898.)

1. BOUNDARIES—ENCROACHMENT.
   Where the owner of a lot on which there is a building whose wall encroaches on the adjoining land acquires title to the adjacent lot, the encroachment ceases, and, even if he subsequently severs the title to the lots, the adjoining lot is charged with the servitude of the wall, and the title to the dominant lot is not open to the objection that it encroaches upon the adjoining lot.

2. SAME—OVERHANGING EAVES.
   Where the owner of land on which a house stands voluntarily throws into the street a strip of land overhung by the eaves of the house, and the municipality has only an easement in the strip, and the projection of the eaves violates no local ordinance, the fact of the projection constitutes no objection to the title to the land.

3. MORTGAGE SALE—OBJECTIONS TO TITLE.
   A purchaser of land at a sale under foreclosure cannot object to the title on the ground that the appointment of the trustee under the mortgage was invalid because no notice of his appointment, on the death of his predecessor,

had been given to the holders of the bonds secured by the mortgage, where
all parties who could object had either ratified the appointment or had
become estopped by the decree in the foreclosure suit, except the unknown
holders of 10 bonds, and the price to be paid for the property was sufficient
to pay the bonds, interest, and costs.

4. LEASE—EXECUTION BY AGENT WITHOUT AUTHORITY.

Where it appears that the person by whom a lease of land for more than
one year is executed and acknowledged, and who is therein recited to be the
agent of the owner, had no written authority to make it, no statutory au-
thority exists for recording it; hence such lease does not constitute an in-
cumbrance.

Appeal from special term, Dutchess county.

Action by Henry C. Griffin, trustee, against Louis Baust and others
to foreclose a mortgage. From an order requiring Thomas G. Price,
the purchaser at the foreclosure sale, to accept title to the premises,
and complete his purchase, said Price appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT,
HATCH, and WOODWARD, JJ.

John H. Rogan, for appellant.

Joseph W. Middlebrook, for respondents Griffin and others.

Greene & Johnson, for respondent Louis Baust.

GOODRICH, P. J. The premises in question were sold to the ap-
pellant, Price, by a referee, under a judgment of foreclosure and sale,
for the sum of $23,250, and the deposit of 10 per cent. was made with
the referee. The purchaser refuses to accept the referee's deed, on
the following grounds:

"(a) That the building upon the premises purchased by him herein encroaches
upon the adjoining premises on the southerly side, and also on the northerly side,
whereby the value of the premises sold is materially and largely diminished;
and the record owner of said adjoining premises claims that the foundation of
the southerly wall of said building encroaches upon his land to a considerable
extent beyond the encroach of said wall, and he notified the purchaser that he
intended to commence an action to compel the removal of said wall and founda-
tion at once. (b) That the appointment of Henry C. Griffin as trustee under
the mortgaged [sic] foreclosed in the above-entitled action is invalid. (c) That
there is an outstanding lease of the premises sold, made to Isaac H. Lubin, dated
September 29, 1896, and recorded in the office of the register of the county of
Westchester in Liber 1460 of Conveyances, page 140, for the term of three years
from October 1, 1896, with the privilege of a renewal for three years."

Prior to January 12, 1885, the defendant James Bird conveyed to
Solomon's Lodge, No. 196, Free and Accepted Masons, the premises
at Tarrytown described in the mortgage, complaint, and judgment,
fronting 40 feet on Orchard street and 35 feet on Cottage Place, and
bounded on the north by Central avenue, and on the south by lands of
Bird, who at that time owned the premises adjacent on the south,
more than 80 feet in width. At the date named the lodge executed a
mortgage for $21,000 on the premises, conditioned for the payment of
210 bonds, each of the par value of $100. D. O. Bradley was the
trustee named therein, and continued to be trustee until his death, in
February, 1895. A petition was presented to the supreme court in
Westchester county for the substitution of a trustee in his place, and
the plaintiff Griffin was appointed by order of the court, made on
November 14, 1896.

As to the first objection,—of encroachment,—it appears that after the conveyance to the lodge the latter erected upon the premises a large building, which encroached on the land of Bird, adjoining it on the southerly side, from five-eighths of an inch to one inch. In the affidavit of the defendant Bird, used on the motion, he stated that at the time of the execution of the mortgage he was a member and one of the trustees of the lodge, and was employed by it as superintendent and architect to erect the building, and that he acted in that capacity, and that he, "being the owner of the adjacent premises (on the south), first established the south line of said building." At that time he was still the owner of the land south of the building, and some question, apparently, having arisen about the encroachment of the wall upon his adjacent lot, he conveyed to the lodge a strip of land southerly and adjacent to the building, one foot in width. At a later period, and in December, 1894, the lodge conveyed to Bird the entire premises, including the premises described in the mortgage and the additional foot of land, subject to the payment of the bonds and mortgage above referred to. In July, 1896, Bird conveyed the same premises to the defendant Baust, subject to the payment of the bonds and mortgages, which Baust, in the deed, agreed to assume and pay. Thus it appears that since the execution of the mortgage the lodge, Bird, and Baust have, each in turn and respectively at the same time owned the 40 feet 1 inch included in the mortgage, and the adjacent strip of 1 foot, so that the encroachment, if any existed, ceased on the instant of the common ownership of the two parcels by each of the three parties named. In the case of Katz v. Kaiser, 154 N. Y. 294, 48 N. E. 532, the doctrine is laid down that, if the owner of a lot on which there is a building whose wall encroaches upon the adjoining land acquires title to the adjacent lot, the encroachment ceases eo instanti. Even if he subsequently severs the title to the lots, the adjoining lot is charged with the servitude of the wall, and the title to the dominant lot is not open to the objection that it encroaches upon the adjoining lot. In addition to this, it will be observed that Bird established the division line between the southerly boundary of the premises conveyed to the lodge at the time he was the owner of the premises adjacent on the south, and erected the wall in question. It is clear that this action on his part, taken in connection with the subsequent conveyances, would estop him to deny the proper location of the wall, even without any such long continuance of the location as the authorities hold to be binding between the owners of adjacent lots.

The second part of the first objection is that the eaves of the building on the north side overhang a strip of land between such wall and Central avenue, but the record shows that this strip was voluntarily thrown into the street by the owner, that the village has merely an easement, and that the official engineer and surveyor of the village has testified that the building, in this respect, does not violate any ordinance of the village. This objection is not specifically argued in the appellant's brief.

The second objection—to the substitution of the plaintiff as trustee in place of Bradley—rests upon the contention that due notice of application for his substitution was not given to the holders of all the

bonds secured by the mortgage. Chapter 185 of the Laws of 1882 provides that:

"Upon the death of a surviving trustee of an express trust, the trust estate shall not descend to his next of kin or personal representatives, but the trust, if unexecuted, shall vest in the supreme court, with all the powers and duties of the original trustee, and shall be executed by some person appointed for that purpose under the direction of the court. But no person shall be appointed to execute said trust until the beneficiary thereof shall have been brought into court by notice and in such manner as the court may direct."

In New York Security & Trust Co. v. Saratoga Gas & Electric Light Co., 88 Hun, 569, 584, 34 N. Y. Supp. 890, a question arose as to the appointment by the court of a new trustee of a mortgage in place of the one named in the mortgage, where the original trustee had become insolvent. The court held that:

"The plaintiff is properly acting as trustee of the gas company. The court of chancery had jurisdiction of trusts and trustees, and had power, independent of any statute, to remove a trustee on good cause shown, and to appoint another in his place. The supreme court has succeeded to the jurisdiction and power of the court of chancery, and it seems to me unnecessary to cite authorities to prove its jurisdiction and power to appoint one trustee in the place and stead of another. The original trustee under the mortgage becoming insolvent, the supreme court had jurisdiction to appoint a successor trustee. Its order making such appointment was, therefore, not a void order, but may have been, under the circumstances, irregular."

But, under my views of the rules to be adopted on this appeal, it is not necessary to consider this question. The court had jurisdiction to make the order, and to require such notice as it deemed expedient; and it must be presumed that sufficient notice was given. The petition for the substitution was presented or joined in by the holders of $12,000 of the bonds, and has since been ratified by all the bondholders except the owners of $1,000, whose whereabouts cannot be discovered; so that the only question is whether the failure to notify the holders of 10 bonds constitutes a valid objection to the appointment of the trustee. It is not necessary to inquire whether the appointment of Griffin can be attacked collaterally. The only persons who could attack were the holders of the 10 bonds, the lodge, Bird, and Baust. All of these, except the bondholders, were parties defendant in the foreclosure suit. The complaint alleged the due appointment of Griffin as trustee. None of these parties defended, and as to them the judgment becomes res judicata as to the due appointment of Griffin as trustee, so that none of these parties can raise the question of defective appointment.

The price to be paid for the property is sufficient to pay the bonds, interest, and costs. When the purchaser has completed the sale, and paid the money into court, it will be sufficient time for the court at special term to provide security for such bondholders; as, for instance, by having the amount of the bonds deposited with the treasurer of Westchester county, or some other suitable depositary. This question, however, does not arise on this appeal.

The third objection relates to a lease to one Lubin, for the term of three years, of a part of the mortgaged premises, dated September 29, 1895, and recorded May 29, 1897. The lessors named in this

lease were "Free and Murray, as agents for Louis Baust," and it was signed, "Free & Murray, Agts. [Seal]." The acknowledgment reads:

"Before me personally came Free & Murray, agents for Louis Baust, and Isaac H. Lubin, to me known, and known to me to be the individual described in and who executed the foregoing instrument, and who severally acknowledged that they executed the same, and the said Free & Murray duly acknowledged that they executed the foregoing lease as the agents of said Louis Baust."

The real property law (5 Rev. St. [9th Ed.] p. 3588, § 224) provides that:

"A contract for the leasing for a longer period than one year, * * * or an interest therein, is void, unless the contract, or some note or memorandum thereof expressing the consideration, is in writing, subscribed by the lessor * * * or by his lawfully authorized agent."

It appears that Free & Murray had no written authority to make this lease. There was, under these circumstances, no statutory authority for the recording of the lease. Besides this, Baust was a party to the foreclosure suit, and is estopped by the judgment.

The objections raised by the purchaser were not valid, and the order must be affirmed, with costs. All concur.